By the Court.
This was an action for damages for personal injury received by the defendant in error while in the employ of the plaintiff in error.
The plaintiff, after describing in his petition the nature of the work in which he was engaged, the machinery employed and the relative duties of certain employes associated with him in the work, averred that his injuries were caused by and through the negligence of- the defendant in the following particulars;
“1. That said defendant disregarded its duty to use ordinary care and diligence to furnish safe and proper machinery and means for oiling said engines, but negligently provided only a most palpably unsafe, unsecure and dangerous means, as it well knew, of oiling said engines.
“2. That it negligently failed in its duty to plaintiff to use ordinary care and diligence to *517 provide some means whereby each of said engines coüld be disconnected from its controlling levers while plaintiff was at work upon it.
“3. That it negligently failed to use ordinary care and diligence to provide some system of guarding against the starting of said engines by said operators or some other persons while plaintiff was at work upon them, or some system of warning that plaintiff was so at work.
“4. That it negligently failed to provide some means of direct communication between said 'plaintiff and the operators aforesaid. •
“5. That it negligently failed to make and formulate and make known to plaintiff and the operators reasonable, necessary and sufficient rules and regulations providing for warning said plaintiff against the starting of said engines by its levers as aforesaid, nor any sufficient rules and regulations or supervision necessary for the government of its said employes and the operation of said machinery.”
The injury complained of resulted in.the loss of plaintiff’s left hand and arm, and it further appears that prior to that time he had lost his right hand in a former accident.
The defendant answered admitting plaintiff’s employment and injury, the nature of the work in which plaintiff was engaged and the character of the machinery employed in the performance of this work, but denied each and every other allegation in the petition contained, and further answering averred that whatever injuries plaintiff sustained were directly and proximately caused by plaintiff’s own negligence in that he carelessly *518 and recklessly placed his hand within the drum of said “rig” without exercising any ordinary and prudent care for his own safety. Said defendant further answering averred that if it was in any manner whatsoever negligent, which, however, it expressly denied, plaintiff’s own negligence contributed to his injury;, that he had full knowledge of the construction and operation of the machinery and was careless and reckless in its use.
The reply denied all allegations of negligence on the part of the plaintiff.
Upon the trial of the issue to the jury a verdict was returned for the plaintiff in the sum of $20,700. Upon a motion for a new trial the court reduced this amount to $15,000 and rendered judgment accordingly. This judgment of the trial court was affirmed by the circuit court.
There are many assignments of error, but the principal one urged upon the attention of this court is the misconduct of plaintiff’s counsel. It appears .from the record that on the evening of the day on • which the trial was commenced the Cleveland Press, which was circulated and sold upon the streets of Cleveland after three o’clock p. m. of that day, contained the following article:
“he loses arms, fights for pay.
“insurance company relieves employers
OF VICTIM.
“Isaac Trapnell, 64, 7600 Lawn avenue, sat helpless in Judge Babcock’s court Tuesday.
“Trapnell had worked for the Ohio and Western Pennsylvania Dock Company for thirty-eight *519 years. He lost both hands while at. work. He . was in court in his suit against the company for $50,000 damages.
“The company had no attorneys present, for Trapnell was insured in the Aetna Life Insurance Company, according to his attorney, Harry Payer.. The dock company had paid so much a month for Trapnell’s insurance. His fight is with the insurance people.
“In July, 1905, Trapnell’s left arm was caught in the cogs of a hoisting engine. He was unable to work for more than a year. ‘We’ll give you $500 and an easy life job’ the company told Trapnell. Trapnell took the money and paid hospital expenses. He wanted a job as watchman, but the company put him to work on a hoisting engine. Again his arm was caught. He lost the lower part of his only arm.
“Pictures showing him with both arms and with the two pathetic stubs will be introduced as evidence. ‘If there is any delay in justice in most personal injury cases it is because of companies that insure workmen,’ Payer said. ‘They fix a price on flesh and blood and make it a business to fight the injured through all the courts if necessary.’ ”
It further appears from the evidence that the reporter of this newspaper who wrote this article testified that this information was furnished him by one of the attorneys for defendant in error,' and that it was furnished him for the purposes of publication about the time of the commencement of the trial. The evidence, however, fails to show that this article ever came to the attention of any *520 member of the jury, but counsel for defendant relied upon the fact that people generally read the newspapers as sufficient for the court to take judicial knowledge of the fact that these particular jurors, or some of them, had read this particular article.
While this court agrees with counsel for plaintiff in error that this was misconduct on the part of counsel for the defendant in error, and that the same was reprehensible and wholly inexcusable, yet that fact does not necessarily make it prejudicial to defendant. Counsel in the trial of a case may be guilty of many acts of misconduct that would subject him to reprimand by thé court, or even to punishment for contempt of court, and yet the act may not be prejudicial to the rights of either party to the cause; - and in such case it would be highly improper to reverse for such reason. If the fact had been made to appear .by the evidence that the jury, or any member thereof, had read this article before a final determination of this case, this court would be inclined to hold that in such a case it would become the duty of a trial court to withdraw a juror and continue.the case, and for refusal so to do would promptly reverse the judgment. But a matter of this importance cannot be left to conjecture merely. The opportunity was afforded counsel for defendant in error to make that fact appear. They chose to rest their case upon the presumption of fact only, and, therefore, we do not think the court abused its discretion by refusal to withdraw a juror and continue the cause.' Contemporaneously with the publication of this article in the Cleveland *521 Press, an article also appeared in the Cleveland News, which it is also claimed was procured to' be published in that paper by counsel for defendant in error. This article is less objectionable than the one above set forth. What we have said with reference to that applies equally to this publication.
It is also urged upon our attention that during the trial of the case one of the counsel for the plaintiff below was guilty of several acts of misconduct, which in connection with the misconduct hereinbefore stated was highly prejudicial to defendant and prevented a fair trial of the cause. This misconduct consisted of remarks by counsel for plaintiff calculated to prejudice the defendant with the jury. For instance, when an objection to his question was made by opposing counsel, and after the objection had been sustained by the court, the offending counsel would make remarks such as: “I supposed there would be objection to the truth anyhow. It could not be prejudicial,” and “You are objecting because when you make up a bill of exceptions, if ever you have to, it would be much better probably for your side not to have a living representation,” and other remarks of like character throughout the trial of the cause. Remarks .of this kind are wholly improper in the trial of a case and it is the duty of the trial court to see that they are not made, or at least not persisted in, but something must be left to the discretion of a trial court, otherwise we would never reach an end to litigation, and a reviewing court ought not to reverse unless it clearly appears that such misconduct was of such *522 character and so persistent as to prevent a fair trial of the cause. While this court will sustain a trial court in compelling counsel to properly conduct their cause and to refrain from all side remarks and unprofessional conduct either by directions to the jury to disregard these remarks and the punishment of counsel if they persist in offending, or by granting a new trial therefor, yet it will not reverse the judgment until it clearly appears that such conduct was prejudicial to the losing party.
It is contended in this case that the amount of the verdict returned by the jury is sufficient evidence of the fact that this misconduct of counsel inflamed and prejudiced the jury’s mind against the defendant, but that contention cannot be sustained. It is true the verdict was very large, •so large that the trial court thought it excessive in the sum of nearly six thousand dollars, but it is a hard matter for any man, or number of men, to properly estimate the value of the loss of the only arm a man has. The loss of the right arm of course increased the value of the left arm to the plaintiff. True, the defendant was not responsible for that loss, yet at the time this injury occurred to this plaintiff this left arm by reason of the fact that his right arm was gone was of far •more value to him than a left arm would be to any man who is fortunate enough to still possess his right, and while perhaps the verdict was excessive in the amount found by the trial court, yet there is no rule or method by which that fact can be positively determined.
We are also of the opinion that the court did not abuse its discretion, that no improper evidence *523 was admitted and that the court’s charge fairly stated the law of this case, and, therefore, the judgment of the circuit court must be affirmed.

Judgment affirmed.

Nichols, C. J., Johnson, Donahue, Wanamaker, Newman and Wilkin. JJ., concur.